Todd M. Logan, CA SBN 315962
Edelson PC
150 California St., 18th Floor
San Francisco, CA 94111
(415) 638-9853
tlogan@edelson.com

Tyson E. Logan, *pro hac vice forthcoming*
Emily S. Madden, *pro hac vice forthcoming*
THE SPENCE LAW FIRM, LLC
15 S. Jackson St., PO Box 548
Jackson, WY 83001
(307) 733-7290
logan@spencelawyers.com
madden@spencelawyers.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| B.W., *a minor, by and through his next friend, Gary Wrotny,*<br><br>Plaintiff,<br><br>vs.<br><br>AIRBNB, INC.,<br><br>Defendant. | CASE NO. ____________________<br><br>**COMPLAINT & JURY DEMAND** |

In March 2021, B.W., a minor child, and his family, were poisoned by carbon monoxide (CO) gas while staying at an Airbnb vacation rental home in Santa Fe, New Mexico. The Property was beautiful on the outside, recently remodeled, and located in a charming part of Santa Fe. But the Property was not safe: the boiler was in a dangerous state of disrepair, inconspicuously spewing CO for days. The entire family was poisoned and B.W. (an infant) was hospitalized.

Despite a decade of knowledge regarding the serious risks of CO poisoning to guests, and numerous prior CO poisoning deaths at Airbnb properties, Defendant, Airbnb, Inc. did not take reasonable steps for their guests' safety. Defendant Airbnb, Inc.—the global, online platform that has welcomed more than 1.5 billion guests into short-term rentals—did not require the Property (*or any of the millions of other Airbnb listings at the time*) to be equipped with CO alarms. Nor did Airbnb, Inc. verify the hosts' compliance with local laws and regulations with respect to CO alarms. As a result, the Airbnb Host rented the home to the Wrotny family without a functioning CO alarm. The family had no warning they were being poisoned.

B.W. survived the poisoning but suffered serious and permanent injuries, including a permanent brain injury. B.W. brings this Complaint by and through his next friend, Gary Wrotny, against Defendant Airbnb, Inc., whose negligent, reckless, willful, and wanton acts and omissions caused B.W.'s serious injuries and damages.

## I. PARTIES

1. Plaintiff B.W., a minor child, is a Montana citizen who resides in Gallatin County, Montana. B.W. brings this action by and through his parent and next friend, Gary Wrotny, a Montana citizen who resides in Gallatin County, Montana.

2. Defendant Airbnb, Inc. is a publicly traded corporation incorporated in Delaware with its principal place of business in San Francisco County, California. Airbnb, Inc.'s agent for service is: CSC Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

## II. JURISDICTION

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(2) because this suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant Airbnb, Inc. because it is a corporation with its principal place of business in San Francisco, California. This Court also has general jurisdiction over Defendant Airbnb, Inc. because it is essentially "at home" in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(3) because Defendant Airbnb, Inc.'s principal place of business is in San Francisco, California, and it is subject to the Court's personal jurisdiction with respect to this action.

## III. Divisional Assignment

6. This action arises in San Francisco County and should be assigned to the San Francisco Division pursuant to USDCTND Civil L.R. 3-2.

## IV. Facts Common to All Causes of Action

### A. The threat of CO poisoning

7. Carbon monoxide is a potentially lethal gas that is colorless, odorless, and tasteless.

8. Carbon monoxide exposure can quickly lead to CO poisoning.

9. When breathed into the body, CO replaces oxygen in the bloodstream, deprives vital organs and tissues of oxygen, and causes cytotoxic and inflammatory processes resulting in cell death.

10. Carbon monoxide exposure triggers a damaging sequence of physiological changes that can continue to progress long after the victim is out of the toxic environment, and symptoms related to the nervous system and brain can come on long after recovery from CO poisoning.

11. Carbon monoxide can be produced by fuel-burning appliances in a home, like furnaces and water heaters.

12. Because of its colorless, odorless, and tasteless properties, CO is impossible to detect without an alarm.

13. Initial symptoms of CO poisoning make detection difficult because they mimic symptoms of common ailments such as food poisoning, a headache, or the flu.

14. According to the Centers for Disease Control and Prevention, CO poisoning results in more than 400 deaths and more than 100,000 emergency department visits in the U.S. every year.

### B. Laws, Rules, Regulations, and Recommendations Designed to Prevent CO Poisoning

15. Carbon monoxide poisoning is preventable through the installation of CO alarms.

16. Carbon monoxide alarms detect levels of CO and can help prevent CO poisoning.

17. At all material times, Defendant Airbnb, Inc. knew of the dangers of CO poisoning and the means of minimizing that danger.

18. The installation of CO alarms is relatively inexpensive, particularly when compared to the risk of serious injury or death from CO poisoning.

19. At all material times, local regulations through the City of Santa Fe's Short-Term Rental Unit Ordinance required CO alarms in short-term rental properties.

20. At all material times, the City of Santa Fe Short-Term Rental Unit Ordinance required short-term rental properties to obtain Permits and a Business Registration or License.

21. Section R315.2.2 of the International Residential Code, as adopted in New Mexico, requires a property that undergoes alterations, repairs, or additions requiring a permit to have a CO alarm outside each separate sleeping area in the immediate vicinity of the bedrooms.

**C. Airbnb's business model**

22. To foster a system of trust and safety, Defendant Airbnb, Inc. designed and at all material times offered various services and products to ensure guests are comfortable renting properties through its platform. At all material times, these services and products included, but were not limited to, a portal for secure payments; background checks in some locations; cleanliness standards; fraud and scam protection; an urgent safety line; a neighborhood support line; and a guest refund policy.

23. For example, Defendant Airbnb, Inc. allows guests to easily and readily "Get help with a safety issue" through Defendant Airbnb, Inc.'s mobile app.

24. A guest who accesses the "Get help with a safety issue" resource in Defendant Airbnb, Inc.'s app is immediately redirected to a chat room with Airbnb Support where the guest is prompted to "select the issue [they]'re experiencing" from a list of auto-populated options. Guests are informed that the selection of an auto-populated issue "helps [Airbnb Support] get [the guest] to the right [Airbnb] person faster."

25. A gas leak is one of the auto-populated safety issues available for a guest to choose.







***Screenshots from the Airbnb App from the Guest's Side***

26. Defendant Airbnb, Inc. also offers its guests access to a global customer support network that's available 24 hours a day, 7 days a week to provide "[s]upport anytime, day or night . . . . We're there for you whenever you need assistance."

27. At all material times, Defendant Airbnb, Inc. knew or should have known that guests trust it will assist with and remedy any unsafe condition that arises during a guest's stay in a vacation property rented through Defendant Airbnb, Inc.'s platform.

28. At all material times, Defendant Airbnb, Inc. curated and published on its website a "Resource Center" that provided hosts with a variety of resources and information.

29. At all material times, Defendant Airbnb, Inc.'s Resource Center included information for hosts about the dangers of CO exposure and poisoning, and the importance of having functioning CO alarms.

30. At all material times, CO alarms were considered an "amenity" on Defendant Airbnb, Inc.'s global platform.

**D. Airbnb knew CO poisoning is life-threatening but preventable, yet failed to take minimal, inexpensive steps to ensure listings are properly equipped with CO alarms**

31. Since 2013, at least 19 people have died from CO poisoning while staying at properties rented through Defendant Airbnb, Inc.'s platform.

32. At all material times, Defendant Airbnb, Inc. had knowledge of and was aware of the dangers of CO exposure poisoning in short-term vacation rental properties.

33. At all material times, Defendant Airbnb, Inc. knew that CO alarms can prevent CO exposure and poisoning from occurring in short-term vacation rental properties.

34. In 2014, Defendant Airbnb, Inc. published a blog post stating: "We know that smoke and carbon monoxide detectors save lives, but published reports indicate that roughly 60 percent of all homes in North America don't have carbon monoxide detectors. We want to do more. By the end of 2014, we'll require all Airbnb hosts to confirm that they have these devices installed in their listing. To help achieve this goal, we are giving away smoke and carbon monoxide detectors to every eligible host in the United States who requests one and we're working to expand all of these initiatives around the world."

35. This blog post has since been deleted by Defendant Airbnb, Inc.

36. Defendant Airbnb, Inc. was acutely aware of the danger of CO, and the importance of a CO alarm as a potentially life-saving device in every home with a fuel-burning appliance. However, to date, Defendant Airbnb, Inc. still has never required hosts to (a) have CO alarms in their rental properties; or (b) have hosts or guests confirm that CO alarms are present in active listings on the platform.

37. At all material times, Defendant Airbnb, Inc. elected not to require or verify the safety, suitability, location, quality, or compliance with the law or Airbnb policies and standards with respect to CO alarms.

38. Defendant Airbnb, Inc. elected not to require or verify hosts' compliance with respect to CO alarms despite Defendant Airbnb, Inc.'s knowledge that CO exposure and poisoning involves an unreasonable risk of harm to guests using its platform.

39. Upon information and belief, a 2018 study conducted by public health researchers found that only 58% of hosts had installed CO alarms in their short-term rental properties listed on Defendant Airbnb, Inc.'s platform.

40. Upon information and belief, Defendant Airbnb, Inc. elected not to require or verify hosts' compliance with respect to CO alarms because doing so would result in deactivating non-compliant listings which would negatively impact Defendant Airbnb, Inc.'s bottom line.

41. At all material times and over the course of several years, Defendant Airbnb, Inc. published several statements, blog posts, and similar resources on its Resource Center warning against the dangers of CO poisoning and reiterating the importance of having functional CO detectors in properties listed through the platform.

42. For example, at all material times, Defendant Airbnb, Inc.'s host Resource Center contained resources:

A. Recommending but not requiring hosts to install CO alarms;

B. A sample Home Safety Checklist recommending but not requiring hosts to have a CO alarm on every level of the home and outside every sleeping area regardless of whether the property had any fuel burning sources.

C. Recommending but not requiring hosts to understand the risks of CO exposure and poisoning.

D. Recommending but not requiring hosts to install CO alarms in spaces where fuel-burning appliances are present.

E. Recommending but not requiring hosts to have CO alarms regardless of whether the property had a fuel burning source if they were hosting families with children.

F. Recommending but not requiring hosts to test CO alarms regularly or at appropriate intervals.

G. Recommending but not requiring hosts to ensure the listing description was accurate and up to date with respect to the presence of CO alarms (or lack thereof).

43. Requiring hosts to install functioning CO alarms in their short-term rental properties is relatively inexpensive, particularly when compared to the risk of serious injury or death resulting from CO poisoning.

**E. The Property**

44. At all material times, Albert Padilla, Deborah Padilla, and/or Goodgame rented the Property as a short-term rental through Host Platforms, including Airbnb.

45. At all material times, the Property had a combustion gas-burning boiler and radiator heating system.

46. At all material times, the Property should have been equipped with functioning and properly installed CO alarms.

47. The Property didn't have any functioning CO alarms at the time of the Wrotnys' stay in March 2021.

**F. The poisoning: March 22, 2021–March 25, 2021**

48. In March 2021, Gary Wrotny and his wife, Emily Wrotny, started a cross-country move from Asheville, North Carolina, to Bozeman, Montana, with their minor children and the family dog.

49. To break up the drive, the Wrotnys planned a week-long travel hiatus in Santa Fe. The Wrotnys reserved the Property via Defendant Airbnb, Inc.'s platform for an eight-night stay from March 22, 2021, through March 30, 2021.

***i. March 22, 2021: Plaintiff arrives in Santa Fe and goes to the Property***

50. The Wrotnys arrived in Santa Fe around 5:00 p.m. on March 22, 2021. They noticed a strong smell from the back of the house near a carpeted bedroom.

51. The Wrotnys assumed the presence of cigarette smoke, so they opened a window in the back bedroom to help air out the smell.

***ii. March 23, 2021: Goodgame visits the Property and confirms an odd smell is emanating from the boiler, which was a common occurrence.***

52. The next morning, on March 23, 2021, the Wrotnys experienced headaches and drowsiness, and they assumed the symptoms were from traveling and altitude.

53. Around 10:05 a.m. on March 23, 2021, Emily Wrotny messaged Goodgame about the strong, possible cigarette smell in the back of the Property.

54. Goodgame went to the Property around 12:30 p.m. Upon her arrival, Goodgame walked to the back of the Property, opened the door to the boiler, and said: "Yep, it's in there—sometimes it smells weird. I'll bring you an air purifier."

55. Goodgame later dropped off an air purifier.

56. Around 10:30 p.m., Emily Wrotny went to give B.W. a bottle when she discovered B.W. unresponsive and covered in vomit. B.W. eventually regained consciousness and began vomiting uncontrollably again.

57. The Wrotnys took B.W. to the Emergency Department.

***iii. March 24, 2021: Plaintiff continues to be exposed to and poisoned by CO***

58. B.W. was discharged from the Emergency Department the next morning, on March 24, 2021. The Wrotnys returned to the Property that morning.

***iv. March 25, 2021: The Wrotnys first learn there's a CO issue***

59. On the morning of March 25, 2021, the Wrotnys' symptoms reappeared.

60. Emily Wrotny called Defendant Airbnb, Inc.'s Airbnb Support to seek guidance regarding the ongoing issues. Later that morning, Emily Wrotny received a message from Defendant Airbnb, Inc.'s Airbnb Support stating: "I have confirmed that this particular issue since it might be [a CO-related issue] as described by your host [i]s an urgent matter that needs to be handled by a specialized team." This message was the first time the Wrotny family was informed of a CO-related issue.

61. Once the Wrotny family was informed of a CO issue, they evacuated immediately.

**G. The Aftermath**

62. As a result of being poisoned, B.W. has suffered serious and permanent injuries--physically, emotionally, mentally, and financially. His impairments and injuries include but are not limited to: permanent brain injury, and related cognitive, physiological, behavioral and social abnormalities.

63. As a direct and proximate result of Defendant Airbnb, Inc.'s negligent, reckless, willful, and wanton acts and omissions, B.W. suffered and will continue to suffer extreme personal injuries that are set forth more fully in the "Damages" section of this Complaint.

## V. First Cause of Action: Negligence

64. At all material times, Defendant Airbnb, Inc. had a duty to exercise reasonable care under the circumstances.

65. Rather than exercising reasonable care under the circumstances, Defendant Airbnb, Inc. knowingly refused to take basic safe measures to protect guests from CO exposure and poisoning.

66. At all material times, Defendant Airbnb, Inc. knowingly elected not to require hosts to have or maintain CO alarms in active properties.

67. At all material times, Defendant Airbnb, Inc. knowingly elected not to verify that active listings had properly installed, functioning, and maintained CO alarms.

68. At all material times, Defendant Airbnb, Inc. elected not to require or verify compliance with laws, regulations, and rules that affect the short-term rental and home sharing business at city, state, and country levels, including the City of Santa Fe's Short Term Rental Unit Ordinance and the International Residential Code.

69. The duty to exercise reasonable care owed by Defendant Airbnb, Inc. to B.W. was breached through its negligent, reckless, willful, and wanton acts and omissions, including but not limited to the following:

a. Failing to exercise ordinary care under the circumstances;

b. Failing to require CO alarms in the Property, despite years of knowledge of the serious risks of permanent injury or death to guests due to CO poisoning;

c. Failing to require functioning CO alarms be maintained in active listings;

d. Failing to verify functioning and properly maintained CO alarms are present in active listings;

e. Failing to require compliance with Santa Fe's Short-Term Rental Unit Ordinance, the International Residential Code, and other applicable rules, laws, and/or regulations;

f. Failing to verify compliance with Santa Fe's Short-Term Rental Unit Ordinance, the International Residential Code, and other applicable rules, laws, and/or regulations; and

g. Otherwise failing to act reasonably under the circumstances.

70. As a direct and proximate result of Defendant Airbnb, Inc.'s negligent, reckless, willful, and wanton acts and omissions, B.W. suffered serious personal injuries that are set forth more fully in the "Damages" section of this Complaint.

## VI. DAMAGES

71. As a direct and proximate result of Defendant's negligent, reckless, willful, and wanton acts and omissions, Plaintiff is entitled to compensation for the following damages:

A. Past and future physical pain and suffering in an amount to be proven at trial;

B. Past and future emotional pain and suffering in an amount to be proven at trial;

C. Past and future loss of enjoyment of life in an amount to be proven at trial;

D. Past and future disability in an amount to be proven at trial;

E. Future loss of income and earning capacity in an amount to be proven at trial;

F. Past and future medical and related expenses in an amount to be proven at trial;

G. Past and future caretaking in an amount to be proven at trial;

H. Past and future disfigurement in an amount to be proven at trial;

I. Other past and future pecuniary loss in an amount to be proven at trial;

J. Punitive damages; and

K. All allowable costs, expenses, and fees associated with this litigation.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests this Court enter judgment against Defendant in an amount supported by the allegations of this Complaint and the evidence at trial as follows:

1. Judgment against Defendant for general damages in an amount consistent with the allegations of this Complaint and to be proven at trial;

2. Judgment against Defendant for special damages in an amount consistent with the allegations in this Complaint and to be proven at trial;

3. Judgment against Defendant for punitive damages; and

4. Judgment for costs, interests, and such other and further relief as this Court deems just and equitable.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff by and through counsel hereby requests a trial by jury in the above-entitled cause of action, pursuant to Fed.R.Civ.P. 38(b).

Respectfully submitted this 21st day of March, 2024,

**EDELSON PC**

/s/ Todd Logan
Todd M. Logan
150 California St., 18th Floor
San Francisco, CA 94111
(415) 638-9853
tlogan@edelson.com

Tyson E. Logan, *pro hac vice forthcoming*
Emily S. Madden, *pro hac vice forthcoming*
THE SPENCE LAW FIRM, LLC
15 S. Jackson St., PO Box 548
Jackson, WY 83001
(307) 733-7290
logan@spencelawyers.com
madden@spencelawyers.com

*Attorneys for Plaintiff*