UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.W., <br><br> Plaintiff, <br><br> v. <br><br> AIRBNB, INC., <br><br> Defendant. | Case No. 24-cv-01770-AMO <br><br> **ORDER RE MOTION TO DISMISS** <br> Re: Dkt. No. 17 |

B.W., a citizen of Montana, suing through his father as his next friend, alleges that he suffered carbon monoxide poisoning while staying at an Airbnb rental located in Santa Fe, New Mexico. Complaint ("Compl.") (Dkt. No. 1) ¶¶ 1, 48-61. An infant at the time of the incident, B.W. sustained a permanent brain injury and related cognitive, physiological, behavioral, and social abnormalities. *Id.* ¶ 62. He now sues Airbnb for negligence. *Id.* ¶¶ 64-70. Airbnb moves to dismiss.[1] Motion to Dismiss ("MTD") (Dkt. No. 17); Reply in Support of Motion to Dismiss ("Reply") (Dkt. No. 44). B.W. opposes. Opposition to Motion to Dismiss ("Opp.") (Dkt. No. 36). The parties' briefing raises three issues: (1) whether the law of California, proposed by Airbnb, or New Mexico, for which B.W. advocates, should apply, (2) whether, under the applicable law, B.W.'s claim for negligence fails because Airbnb owed him no duty of care, and (3) whether B.W.'s prayer for punitive damages should be stricken. Mot. at 6, 9, 15; Opp. at 10, 15, 24; Reply

---

[1] With its motion, Airbnb asks that the Court take judicial notice of Airbnb's Terms of Service, Version 11, which Airbnb represents were in effect at the time of B.W.'s injury. Dkt. No. 20. The request is **GRANTED IN PART AND DENIED IN PART**. The Court takes judicial notice of the existence of the terms but not for the truth of any assertions contained therein. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024) (taking limited judicial notice of the existence Meta's terms of service but noting that the Court "cannot conclude from Meta's submission that [it] was the version in effect during the period relevant to plaintiffs' claims, or that plaintiffs ever assented to the terms therein").

at 1, 9, 15.  The Court examines each issue in turn, and concludes the motion should be **DENIED**.

### A. Choice of Law

Where, as here, a federal court exercises subject-matter jurisdiction on the basis of diversity, it must apply the choice-of-law rules of the forum state.  *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022) ("In diversity cases, we apply the choice-of-law rules of the forum state to decide state-law questions.").  California's three-part governmental interest test thus governs the choice-of-law analysis here.  *See id.* ("Insofar as the state law question at issue involves the interpretation of contracts, state courts look to Civil Code § 1646 . . . .  In all other contexts, California courts analyze the governmental interests of the various jurisdictions involved to select the most appropriate law.") (internal quotations and citations omitted).  At step one of that framework, "the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction."  *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citation omitted).  At step two, "if the laws do differ, the court must determine whether a 'true conflict' exists in that each of the relevant jurisdictions has an interest in having its law applied."  *Id.* (citation omitted).  At step three, "if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied."  *Chen v. L.A. Truck Ctrs., LLC*, 7 Cal. 5th 862, 867-68 (2019).  "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state."  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).

There is no dispute at step one of the governmental interest test.  The parties agree that the substantive law of California and New Mexico differ.  *See* Opp. at 13 ("New Mexico and California law differs greatly with respect to the determination of a legal duty, the level of conduct required to recover punitive of damages, and the applicable burden of proof for punitive damages."); Reply at 7 ("Airbnb agrees that there is a conflict between New Mexico and

2

California law such that the Court must evaluate the states' relative interests in the application of their law.").

The parties dispute steps two and three. With respect to the inquiries relevant at each, B.W. has failed to carry his burden to demonstrate that the Court should depart from applying California law by default. For purposes of step two, despite B.W.'s contention that "there is a false conflict" because "New Mexico has a predominant, presumptive, and prevailing interest in having its laws applied to this case [while] California does not[,]" both states have an interest in having their respective laws applied to this action. New Mexico has a legitimate interest in having its laws applied in this case because the injury giving rise to this litigation occurred within its borders. *See Munguia v. Bekins Van Lines*, LLC, No. 1:11-CV-01134-LJO, 2012 WL 5198480, at *11 (E.D. Cal. Oct. 19, 2012), *report and recommendation adopted*, No. 1:11-CV-01134-LJO, 2012 WL 5511749 (E.D. Cal. Nov. 14, 2012) (finding that Nevada had a competing, but minimal, interest in the application of its laws because the accident giving rise to the litigation occurred there).

California has a countervailing interest in having its laws applied because Airbnb is a resident corporation with its principal place of business in San Francisco, *see* Compl. ¶ 4, and "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory[.]" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591-92 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). B.W. has made no showing that the policies underpinning any liability on the part of Airbnb were made other than within California.[2] *See* Compl. ¶¶ 4 (alleging Airbnb "is a corporation with its principal place of business in San Francisco, California); 34 (alleging Airbnb published a blog post promising that "[b]y the end of 2014, we'll require all Airbnb hosts to confirm that they have these devices installed in their listing."); 37 (alleging

---

[2] Thus, while B.W. contends that "New Mexico has a significant interest in 'reliably defining the duties and scope of liability of [entities] doing business within its borders[,]' " and in defining the scope of liability for punitive damages, Opp. at 14, the same can be said of California because Airbnb operates here, and B.W. has made no showing the policy decisions that purportedly give rise to a duty of care emanated outside the state. *See Mazza*, 666 F.3d at 591.

3

Airbnb "elected not to require or verify the safety, suitability, location, quality, or compliance with the law or Airbnb policies and standards with respect to CO alarms"); 38 (alleging Airbnb elected not to require or verify hosts' compliance with respect to CO alarms despite its knowledge that CO exposure and poisoning involves an unreasonable risk of harm to guests using its platform"); 40 (alleging Airbnb "elected not to require or verify hosts' compliance with respect to CO alarms because doing so would result in deactivating non-compliant listings which would negatively impact Defendant Airbnb, Inc.'s bottom line"); 41 (alleging Airbnb "published several statements, blog posts, and similar resources on its Resource Center warning against the dangers of CO poisoning and reiterating the importance of having functional CO detectors in properties listed through the platform."). Here, the connection between the forum state and the controversy is not limited. *Cf. Abogados*, 223 F.3d at 936 (finding that New York did not have a significant interest in applying its law because no activities relevant to the cause of action occurred in the state and its interest in the litigation was limited to regulating a New York corporation's conduct); *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467-68 (9th Cir. 1994) (applying French law to the plaintiff's tort claims where "virtually all of the relevant conduct occurred outside California"); *Munguia*, 2012 WL 5198480, at *11 (finding that "[w]hile Nevada ha[d] an interest in limiting the recovery of damages for accidents occurring on its roadways, Nevada's interest in th[e] action [wa]s limited because Defendants [we]re not residents of Nevada, nor ha[d] they shown any connection or nexus with Nevada, other than the fact that Nevada [wa]s the place of the accident."). Accordingly, the Court finds a true conflict exists here because each state has an interest in having its respective laws applied in this suit.

At step three, the Court "carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied." *Chen*, 7 Cal. 5th at 867-68. As the party requesting that foreign law apply, B.W. has the burden "to show that the foreign rule of decision will further the interests of that state." *CRS Recovery, Inc.*, 600 F.3d at 1142.

At this step, B.W. argues the following:

> Even if California has a comparable interest, it is minimal compared to New Mexico's. In New Mexico, foreseeability may not be used by courts to "limit or eliminate a duty in a particular class of cases." *Rodriguez[ v. Del Sol Shopping Ctr. Assocs., L.P.]*, 2014-NMSC-014, ¶ 24[, 326 P.3d 465 (N.M. 2014)]. Instead, "[f]orseeability determinations are reserved for a jury because such determinations require the jury's common sense, common experience, and its consideration of community behavioral norms." *Id.* ¶ 22. This principle is grounded in constitutional notions under both the New Mexico and the U.S. Constitutions. *Id.* New Mexico courts take this principle "seriously and have cautiously guarded the right to jury trial in civil cases by erring on the side of allowing factual issues to be decided by juries. *Id.* And in New Mexico, issues regarding foreseeability are matters of fact reserved for the jury. *Id.* Since New Mexico's duty analysis is based on the constitutional right to a jury trial, New Mexico's interest would be the more impaired if its law were not applied. *Abogados*, 223 F.3d at 934.

Opp. at 14-15. B.W. does not grapple with California's interests nor does he explain how New Mexico's interests would be more impaired if California law, rather than the law of New Mexico, were applied. Accordingly, the Court will apply, by default, California law in determining whether B.W. has sufficiently alleged facts giving rise to a duty of care by Airbnb.

**B.    Duty**

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that [the defendant] breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' " *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (quoting *Nally v. Grace Community Church*, 47 Cal. 3d 278, 292 (1988)). The existence of a duty is "threshold matter" that presents "a question of law to be resolved by the court." *Id.* (citations omitted). "Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* (internal quotations and citation omitted).

Section 1714(a) of the California Civil Code provides the general rule of duty in California. To determine whether a defendant owes a plaintiff a duty of care under Section 1714(a), courts undertake a two-step inquiry. First, courts determine "whether the defendant's 'entire conduct created a risk of harm' to the plaintiff." *Brown*, 11 Cal. 5th at 214-215 n.6. If so,

5

1    courts then determine whether to narrow or except that duty based on the multifactor test set forth

2    in *Rowland v. Christian*, 69 Cal. 2d 108 (1968).  *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal.

3    5th 993, 1022 (2023) (citations omitted).  As discussed below, each of these steps is met here.

### 1. Risk of Harm

B.W. adequately alleges that Airbnb's conduct created a risk of harm.  He alleges that Airbnb "had knowledge of and was aware of the dangers of CO exposure poisoning in short-term vacation rental properties[,]" Compl. ¶ 32, "knew that CO alarms can prevent CO exposure and poisoning from occurring in short-term vacation rental properties[,]" *id.* ¶ 33, and despite its promises to do so, it "never required hosts to (a) have CO alarms in their rental properties; or (b) have hosts or guests confirm that CO detectors are present in active listings on the platform." *Id.* ¶ 36.  These allegations sufficiently plead that Airbnb's own conduct created a risk of harm – by facilitating the transaction that led to B.W. staying a rental property that, statistically, would not be equipped with a carbon monoxide alarm because Airbnb, aware of the risks, declined to require it of its hosts – such that it owed B.W. a duty to exercise due care.[3]  Indeed, while Airbnb highlights the portions of its terms in which it disclaims ownership or control over the properties listed on its website, it nonetheless acknowledges the role its platform plays.  It "allows [h]osts and [g]uests to connect with each other to transact, make payments, and communicate." Mot. at 8.  Given the ease with which the platform facilitates rental transactions among between hosts and 1.5 billion guests, *see* Compl. at 1, Airbnb connects hosts and guests on an unprecedented scale.  With that volume of transactions comes an increased risk that any Airbnb guest would be staying at a property that Airbnb knew, statistically, would likely not be equipped with a carbon monoxide detector and would expose guests to known carbon monoxide-related risks.  For these reasons, Airbnb owed B.W. a duty to use due care in its operations.

Airbnb's argument that this theory fails "because Plaintiff does not and cannot allege that the risk of listing properties without working carbon monoxide detectors was a necessary

---

[3] Because the Court concludes that a duty attaches under this theory, the Court does not address the parties' arguments about why it does or does not arise for other reasons nor does the Court analyze the cases the parties cite in connection with those arguments.

United States District Court
Northern District of California

component of Airbnb's providing an online marketplace[,]" Mot. at 15, is not convincing. Airbnb bases this argument on *Jane Doe No. 1 v. Uber Techs., Inc.*, which explained "[t]he crux of the difference between misfeasance and nonfeasance for purposes of assessing a duty to protect is whether the third-party conduct was a necessary component' of the [defendant's] conduct at issue." 79 Cal. App. 5th 410, 427 (2022), *review denied* (Aug. 24, 2022) (internal quotations and citations omitted). The Ninth Circuit, however, has determined this decision would not be followed by the California Supreme Court, as the necessary component test applied there, "would have precluded the outcome" in other state court cases, including a California Supreme Court decision, in which the necessary component test was not applied. *Doe v. Uber Techs., Inc.*, No. 22-16562, 2025 WL 80365, at *3 (9th Cir. Jan. 13, 2025), *cert. denied sub nom. Uber Techs., Inc. v. Drammeh*, No. 24-1020, 2025 WL 2823717 (U.S. Oct. 6, 2025). The necessary component test thus does not preclude a finding of duty here. *See id.*; *see also Brown*, 11 Cal. 5th at 215 n.6 ("Although our precedents have sometimes referred to the distinction between 'misfeasance' and 'nonfeasance,' we now understand this terminology to be imprecise and prone to misinterpretation. The proper question is not whether an actor's failure to exercise reasonable care entails the commission or omission of a specific act. Rather, it is whether the actor's entire conduct created a risk of harm.") (internal quotations and citations omitted). Because Airbnb's entire conduct created the risk of harm, it owes B.W. a duty of care.

### 2. *Rowland* factors

Having determined that Airbnb owes B.W. a duty of care, the Court now assesses whether any of the *Rowland* factors warrant narrowing or excepting that duty. The *Rowland* factors fall into two categories. *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1145 (2016). "Three factors – foreseeability, certainty, and the connection between the plaintiff and the defendant – address the foreseeability of the relevant injury[.]" *Id.* "[T]he other four – moral blame, preventing future harm, burden, and availability of insurance – take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." *Id.* The Court addresses each category in turn.

///

7

**a.     Foreseeability of the Relevant Injury**

Issues related to foreseeability are assessed based on the information available at the time of the alleged negligence. The California Supreme Court has long recognized that "[t]he most important of these considerations in establishing duty is foreseeability." *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 434 (1976). "[T]he court deciding duty assesses the foreseeability of injury from the category of negligent conduct at issue." *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 773 (2011).

B.W. has sufficiently alleged facts establishing that increasing the risk of harm of carbon monoxide exposure and poisoning was reasonably foreseeable for Airbnb. As discussed above, at the time B.W. was poisoned, Airbnb "had knowledge of and was aware of the dangers of CO exposure poisoning in short-term vacation rental properties[,]" Compl. ¶ 32, "knew that CO alarms can prevent CO exposure and poisoning from occurring in short-term vacation rental properties[,]" *id.* ¶ 33, had acknowledged "published reports indicat[ing] that roughly 60 percent of all homes in North America don't have carbon monoxide detectors," and despite its promises to do so, it "never required hosts to (a) have CO alarms in their rental properties; or (b) have hosts or guests confirm that CO detectors are present in active listings on the platform." *Id.* ¶ 36.[4]

The connection and certainty factors also bolster the foreseeability analysis, as they are not as attenuated as Airbnb claims. It asserts that "any conduct by Airbnb bears, at most, a distant connection to Plaintiff's injury. Airbnb provides an online marketplace connecting property owners looking to rent their properties with potential guests. Airbnb had no physical contact with or control over the Property or the heater that Plaintiff alleges leaked poisonous gas." Reply at 14. This ignores that B.W. was poisoned at the New Mexico property that was booked using the online marketplace that functioned as Airbnb designed it – i.e., to connect property owners looking to rent their properties with potential guests, and without the controls in place that Airbnb

---

[4] B.W. also alleges that "[s]ince 2013, at least 19 people have died from CO poisoning while staying at properties rented through Defendant Airbnb, Inc.'s platform," but does not allege that Airbnb was aware of those deaths. Nonetheless, the reasonable inference to draw is that Airbnb was aware of them.

1  elected not to implement notwithstanding the known risks of lacking carbon monoxide detectors
2  and carbon monoxide poisoning.  The certainty of that harm occurring was also known to Airbnb,
3  having announced its promise to require and verify carbon monoxide detector installation after
4  public reports indicated that 60% of homes in America do not have them.

Foreseeability thus does not weigh in favor of narrowing Airbnb's duty to B.W.  *See Doe*, 2025 WL 80365, at *6 (concluding that foreseeability did "not weigh in favor of narrowing Uber's duty to its app users" where the plaintiff had "identified numerous examples of similar incidents that occurred prior . . . as well as evidence that Uber was aware of these incidents.").

### b. Public Policy Concerns

The " 'duty analysis is forward-looking' in regard to policy issues surrounding burdens that would be placed on defendants." *Kuciemba*, 14 Cal. 5th at 1022 (citations omitted).  These issues do not favor Airbnb.

With respect to "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach," *Kuciemba*, 14 Cal. 5th at 1027 (quoting *Rowland*, 69 Cal. 2d at 113), Airbnb contends that because it lacks "ownership, control, or access to the property, verifying hosts' representations would be practically impossible." Reply at 13.  This argument is not convincing.  A sophisticated, well-resourced, and highly innovative company like Airbnb can devise appropriate measures (which may potentially be as simple as delisting a property where the host has not sufficiently demonstrated compliance) so as not to increase the risk of connecting unsuspecting guests with hosts whose properties lack carbon monoxide detectors.[5]

Airbnb's remaining arguments are also unconvincing.  It asserts that "imposing a duty on Airbnb would not advance the policy of preventing future harm, as Airbnb neither brought about the carbon-monoxide leak nor has the omnipotence to foresee when and where such an accident will occur." Reply at 14.  Airbnb ignores the allegations in the complaint that, at the time B.W.

---

[5] Airbnb highlights that the owners of the Santa Fe home where B.W. was poisoned had certified that a carbon monoxide detector was present.  Airbnb may present this fact at summary judgment and trial, but not at the pleading stage.

was poisoned, it knew most homes in the United States are not equipped with carbon monoxide detectors and nonetheless proceeded to connect guests with hosts, even after the dangers of carbon monoxide exposure were so well documented that Airbnb promised to do something about it, could do something about, and it ultimately elected to continue business as usual. While discovery will likely reveal the reasons for Airbnb's decision, based on the current allegations in the complaint, and despite Airbnb's contention to the contrary, *see* Reply at 14, its conduct is blameworthy. Finally, Airbnb does not address the insurance factor. According to B.W., "there is generally commercial insurance available for ordinary negligence. This is not an instance where the duty is to prevent third party criminal or intentional activity for which there is commonly a coverage exclusion." Opp. at 24. Absent a response from Airbnb on this point, the insurance factor cuts against it.

For these reasons, none of the relevant policy considerations warrant limiting or excepting Airbnb's duty to B.W. *See Doe*, 2025 WL 80365, at *6. The Court now turns to the parties' arguments about B.W.'s prayer for punitive damages.

### C. Punitive Damages

Airbnb moves to "strike Plaintiff's request for punitive damages under Rule 12(b)(6) because Plaintiff fails to allege any facts that would support such a claim under California law." Mot. at 17. California law authorizes such damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. . . ." Cal. Civ. Code § 3294. "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3). "Malice" is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1).

In support of his prayer for punitive damages, B.W. points to the following allegations:

- "Since 2013, at least 19 people have died from CO poisoning while staying at properties rented through Defendant Airbnb, Inc.'s platform." Compl. ¶ 31.

- "At all material times, Defendant Airbnb, Inc. had knowledge of and was aware of the dangers of CO exposure poisoning in short-term vacation rental properties." *Id.* ¶ 32.

- "At all material times, Defendant Airbnb, Inc. knew that CO alarms can prevent CO exposure and poisoning from occurring in short-term vacation rental properties." *Id.* ¶ 33.

- "In 2014, Defendant Airbnb, Inc. published a blog post stating: 'We know that smoke and carbon monoxide detectors save lives, but published reports indicate that roughly 60 percent of all homes in North America don't have carbon monoxide detectors. We want to do more. By the end of 2014, we'll require all Airbnb hosts to confirm that they have these devices installed in their listing. To help achieve this goal, we are giving away smoke and carbon monoxide detectors to every eligible host in the United States who requests one and we're working to expand all of these initiatives around the world.' " *Id.* ¶ 34.

- "This blog post has since been deleted by Defendant Airbnb, Inc." *Id.* ¶ 35.

- "Defendant Airbnb, Inc. was acutely aware of the danger of CO, and the importance of a CO alarm as a potentially life-saving device in every home with a fuel-burning appliance. However, to date, Defendant Airbnb, Inc. still has never required hosts to (a) have CO alarms in their rental properties; or (b) have hosts or guests confirm that CO alarms are present in active listings on the platform." *Id.* ¶ 36.

- "Upon information and belief, Defendant Airbnb, Inc. elected not to require or verify hosts' compliance with respect to CO alarms because doing so would result in deactivating non-compliant listings which would negatively impact Defendant Airbnb, Inc.'s bottom line." *Id.* ¶ 40.

- "At all material times and over the course of several years, Defendant Airbnb, Inc. published several statements, blog posts, and similar resources on its Resource Center warning against the dangers of CO poisoning and reiterating the importance of having functional CO detectors in properties listed through the platform." *Id.* ¶ 41.

Taking these allegations as true and in the light most favorable to B.W., they are sufficient to sustain a prayer for punitive damages at the motion to dismiss stage. *Cf. Opperwall v. State Farm Fire & Cas. Co.*, No. 17-CV-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (dismissing prayer for punitive damages where the plaintiff's "conclusory allegations" failed to

1  provide defendant with fair notice of the nature of his claims); *Kelley v. Corr. Corp. of Am.*, 750 F.
2  Supp. 2d 1132, 1148 (E.D. Cal. 2010) (dismissing punitive damages claims where they were
3  "unsupported by allegation of any facts").
4      Accordingly, Airbnb's request to strike B.W.'s prayer for punitive damages under Rule
5  12(b)(6) is **DENIED.**
6      **IT IS SO ORDERED.**
7  Dated: December 30, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**